**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VERANCE CORPORATION,<br>Plaintiff,<br>v.<br>LG ELECTRONICS U.S.A., INC.,<br>Defendant. | Civil Action No. 1:25-cv-09964-ER |

# [PROPOSED] PROTECTIVE ORDER

WHEREAS, Plaintiff Verance Corporation ("Verance") and Defendant LG Electronics U.S.A., Inc. ("LGEUS," and together with Verance, the "Parties") believe that certain information that is or will be encompassed by discovery demands in this action (the "Action") involves the production or disclosure of alleged trade secrets, confidential business information, or other proprietary information, including without limitation Verance's proprietary source code, algorithms, technical specifications, and other alleged trade secret materials embodied in its Aspect and Cinavia digital watermarking technologies;

WHEREAS, the Parties seek a protective order limiting the disclosure of such information in accordance with Federal Rule of Civil Procedure 26(c);

THEREFORE, IT IS HEREBY STIPULATED AMONG THE PARTIES AND ORDERED THAT:

1. Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or of a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material ("Protected Material"). Protected Material shall be

designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2. Any document produced before issuance of this Order with the designation "Confidential" or "Confidential - Outside Attorneys' Eyes Only" or equivalent shall receive the same treatment as if designated "RESTRICTED -- ATTORNEYS' EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3. With respect to documents, information or material designated "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits and declarations; and (e) stipulations. All

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE," both individually and collectively.

copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order. Without limiting the foregoing, DESIGNATED MATERIAL designated "RESTRICTED CONFIDENTIAL SOURCE CODE" shall include, without limitation, Verance's Aspect Receiver Toolkit SDK (the "ART SDK") and any other materials, tools, and documentation provided by Verance to LGEUS under the Verance Corporation Aspect Test Participation Agreement dated January 1, 2021 (the "Aspect Agreement") (collectively with the ART SDK, the "Aspect Materials"), and any source code, object code, algorithms, technical specifications, or other materials reflecting the design, structure, or operation of Verance's watermarking technologies.

4. A designation of Protected Material (i.e., "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon, and, upon request of the producing

Party, shall provide written confirmation of such destruction signed by counsel of record for the receiving Party.

5. "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 15 herein:

(a) outside counsel of record in this Action for the Parties;

(b) employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c) in-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action;

(d) up to and including five (5) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that either party may in good faith request the other party's consent to designate one or more additional representatives, the other party shall not unreasonably withhold such consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the other party has unreasonably withheld such consent;

(e) outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same, together with a current curriculum vitae of the consultant or expert, is served upon the producing Party at least fourteen (14) business days before access to the Protected Material is to be given to that consultant or expert; and (3) the producing Party shall have ten (10) business days after such service to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

(f) independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g) the Court and its personnel.

6. A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7. Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose, including without limitation to design around, reverse engineer, replicate, or otherwise derive any competitive or commercial advantage from any Aspect Materials, source code, algorithms, or other trade secrets of Verance disclosed in this Action. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIAL and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "RESTRICTED --

ATTORNEYS' EYES ONLY," or, to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE."

9. For Protected Material designated RESTRICTED -- ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a)-(c) and (e)-(g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) shall be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client with respect to any products, services, or technologies that compete with or could substitute for the watermarking technologies at issue in this Action.

10. RESTRICTED CONFIDENTIAL SOURCE CODE means any information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs.

11. For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

(a) Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be a thin client, utilize a remote desktop, be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to a printer. The stand-alone computer(s) may only be located within the continental United States at the offices of the producing Party's outside counsel or its vendors. The designating Party will accommodate reasonable requests to provide the stand-alone computer within 50 miles of one of the foregoing locations. The stand-alone computer(s) shall have disk encryption and be password protected. Use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external

system, etc.) is prohibited while accessing the computer containing the source code. All persons entering the locked room containing the stand-alone computer(s) must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the stand-alone computer(s). The producing Party may visually monitor the activities of the receiving Party's representatives from a distance during any source code review, but shall not listen to or otherwise record the receiving Party's representatives. Such monitoring is only to ensure that there is no unauthorized recording, copying, or transmission of the source code. Persons inspecting source code are prohibited from bringing outside electronic devices, including but not limited to cellular telephones, electronic tablets, laptops, zip drives, or other hardware into the secure room with the exception of medical devices, implants, or equipment reasonably necessary for a legitimate medical reason. Use or possession of any recording or memory device (e.g., cellular telephones, electronic tablets, USB memory stick, cameras or any camera-enabled device, CDs, portable hard drive, laptop, etc.) is prohibited while accessing the computer containing the source code;

(b) The receiving Party shall provide at least two (2) business days' notice that it wishes to inspect the source code prior to its first inspection. The producing Party shall provide access to the source code computer from 9 a.m. to 5 p.m. local time on business days (i.e., weekdays that are not federal holidays) for review by the receiving Party, which times may be reasonably extended or changed by agreement to promote this expedited Phase I Source Code Review. Permission for access will not be unreasonably withheld. Proper identification of all persons inspecting the source code must be provided prior to any access to the source code computer. Access to the source code computer may be denied, at the discretion of the producing Party, to any individual who fails to provide proper identification.

(c) The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s);

(d) The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above;

(e) Access to Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE shall be limited to outside counsel and one outside consultant or expert[2] (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. In-house counsel and Party representatives shall not be given access to Source Code Material under any circumstances absent the producing Party's prior written consent or further order of the Court. A receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript, other

[2]For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

Court document (each, a "Source Code Document"), provided that the any such Source Code Document is appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders. To be clear, material designated as "RESTRICTED CONFIDENTIAL SOURCE CODE" shall be subject to all of the protections set forth in Paragraph 11 in addition to all of the protections afforded to "RESTRICTED -- ATTORNEYS' EYES ONLY" information, including the Competitive Use Bar set forth in Paragraph 12 and may be disclosed only to the individuals to whom "RESTRICTED -- ATTORNEYS' EYES ONLY" information may be disclosed.

(f) To the extent portions of Source Code Material are quoted in a Source Code Document, either (1) the entire Source Code Document will be stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE;

(g) No electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically;

(h) The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, all of which shall be designated and clearly labeled "RESTRICTED CONFIDENTIAL SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied. Outside counsel for the receiving Party shall additionally maintain a sign-in/sign-out log identifying each individual who reviews Source Code Material on the stand-alone computer(s), together with the dates and approximate times of access, and shall make that log available to the producing Party upon reasonable request;

(i) If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceeding(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (e.g., a hotel prior to a Court proceeding or deposition);

(j) No handwritten or typed notes, summaries, or descriptions reproducing or closely paraphrasing the specific structure, function, algorithms, or comments contained in the Source Code Material may be removed from the room in which the stand-alone computer is located. Notes that do not reproduce or closely paraphrase such specific code, algorithms, or comments, and that are reasonably necessary to prepare pleadings, expert reports, deposition outlines, or other litigation materials,

may be removed from the room, provided that any such notes shall themselves be treated and, if they contain any Source Code Material, marked as RESTRICTED CONFIDENTIAL SOURCE CODE. Any notes must be stored and maintained in a safe or other secure device that includes keyed access. Any expert as well as the receiving Party's outside counsel of record may not transcribe the notes into electronic form and may not make copies of the notes.

12. Competitive Use Bar. Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively, "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not participate in, supervise, advise on, or otherwise provide input to, any research, development, design, engineering, testing, or sourcing decision relating to digital watermarking, content protection, or other audio or video signal-embedding technology that competes with, or could serve as a substitute for, Verance's technologies, on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate, during the pendency of this Action and for one (1) year after its final conclusion, including any appeals. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, engage in the research, development, design, engineering, testing, or sourcing decisions described above. This paragraph shall not restrict outside counsel of record from continuing to represent the Parties in this or related litigation, including any appeal.

13. Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material. The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

14. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

15. Nothing contained herein shall be construed to prejudice any Party’s right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible

to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

16. Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as confidential.

17. Notwithstanding the designation of information in discovery, there is no presumption that such information can be filed with the Court under seal. A Party seeking to file DESIGNATED MATERIAL shall avoid including another Party's DESIGNATED

MATERIAL in filings unless necessary, and shall otherwise follow the Court's procedures with respect to filing DESIGNATED MATERIAL under seal.

18. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court. The Parties shall confer and attempt in good faith to agree before any trial or other hearing on the procedures under which DESIGNATED MATERIAL may be introduced into evidence or otherwise used at such trial or hearing.

19. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief in accordance with Local Rule 37.2. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.

20. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

21. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought

involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

22. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as “CONFIDENTIAL” or “RESTRICTED -- ATTORNEYS’ EYES ONLY” any documents, information or other material, in whole or in part, produced or given by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as “CONFIDENTIAL” in accordance with this Order.

23. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party’s election either be returned to the producing Party or be destroyed. The receiving Party shall, within that same thirty (30)-day period, verify such return or destruction by a written certification signed by an officer of the receiving Party (or, for material returned or destroyed solely by outside counsel, by outside counsel of record), furnished to the producing Party without need for further request. Nothing in this paragraph relieves any Party of any separate obligation to return, destroy, or cease use of confidential information or materials under any other agreement between the Parties, including without limitation the Aspect Agreement and the Mutual Nondisclosure Agreement between Verance and LGEUS dated January 1, 2021,

referenced in the pleadings in this Action, and compliance with this Order is not a substitute for compliance with such agreements.

24. The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25. Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Given the risk of irreparable harm arising from the unauthorized disclosure or use of trade secret material, any motion under this paragraph concerning actual or threatened disclosure or use of RESTRICTED CONFIDENTIAL SOURCE CODE or other HIGHLY SENSITIVE MATERIAL may be made on shortened notice, and the Parties agree to cooperate in good faith to bring any such motion before the Court as promptly as reasonably possible. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26. Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced

so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

27. Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

29. This Order shall survive the final termination of this Action, and the Court shall retain jurisdiction to enforce the terms of this Order after final disposition of this Action, including any appeals.

**AGREED TO AND RESPECTFULLY SUBMITTED BY:**

*Counsel for Plaintiff Verance Corporation:*

*/s/ David L. Hecht*
David L. Hecht
Maxim Price
J. Tanner Murphy (*pro hac vice* forthcoming)
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
Tel: (212) 851-6821
dhecht@hechtpartners.com
mprice@hechtpartners.com
tmurphy@hechtpartners.com

*Counsel for Defendant LG Electronics U.S.A., Inc.:*

*/s/ John S. Purcell*
John S. Purcell
ARENTFOX SCHIFF LLP
555 South Flower Street, 43rd Floor
Los Angeles, California 90071
Tel: (213) 443-7682
john.purcell@afslaw.com

SO ORDERED this 20th day of October, 2026.

Hon. Edgardo Ramos
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VERANCE CORPORATION, v. LG ELECTRONICS U.S.A., INC.,

Case No.: 1:25-cv-09964 (ER)

## APPENDIX A

## UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER

I, ______________________________________________, declare that:

1. My address is _____________________________________________________.

   My current employer is _______________________________________________.

   My current occupation is _____________________________________________.

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _______________________________________________

Date _______________________________________________

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VERANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-09964-ER |

## [PROPOSED] STIPULATED PROTOCOL GOVERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Plaintiff Verance Corporation ("Verance") and Defendant LG Electronics U.S.A., Inc. ("LGEUS") (individually, a "Party" and collectively, the "Parties") agree to the following Stipulated Protocol Governing Discovery of Electronically Stored Information (the "Protocol" or "Stipulated Protocol"). The Protocol shall govern the production of electronically stored information ("ESI") in the above-referenced matter.

1. **Purpose.** The Parties are expected to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information consistent with Federal Rule of Civil Procedure 26(b)(1). Nothing in this Protocol alters a Party's rights, obligations, or responsibilities under the Federal Rules of Civil Procedure or the Local Civil Rules of the United States District Court for the Southern District of New York, including Local Civil Rule 26.3. This Protocol does not establish any agreement as to either the temporal or subject matter scope of discovery in this Litigation except as specifically set forth in Section 4 below. Nothing in this Protocol shall be construed to alter any discovery obligations or rights under the Federal Rules of Civil Procedure or Local Civil Rules, unless specifically noted. Nothing in this Protocol precludes the Parties from subsequently agreeing to change the scope of discovery of ESI. All document productions shall be subject to a Stipulated Protective Order to be entered by the Court (the "Protective Order"). The Parties each reserve the right to seek exceptions, amendments, or modifications to this Protocol from the Court for good cause shown.

2. **Terminology.** For purposes of this Protocol, the Party requesting production of ESI shall be referred to as the "Requesting Party" and the Party producing ESI in response to such requests shall be referred to as the "Producing Party." The license agreement between the Parties referenced in the operative Complaint (the "Agreement") became effective January 1, 2021 and expired June 30, 2023.

3. **General Principles.** This Protocol does not supersede the provisions of the Protective Order or the Parties' discovery obligations under the Federal or Local Rules. This Protocol does not prevent the Parties from agreeing on a different protocol with respect to a particular production or ESI obtained from a particular device. A separate protocol cannot be used as evidence, however, to support a Rule 26(b)(2)(B) motion that discovery is unduly burdensome or costly. The Parties agree to cooperate in good faith in responding to a Party's request for documents, and the Parties intend to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention. For the avoidance of doubt, if a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Rule 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and a basis for declining to produce such ESI.

4. **Relevant Time Period.** Except as otherwise agreed by the Parties or ordered by the Court, discovery of ESI under this Protocol shall be limited to the period beginning January 1, 2020 and continuing through the date of substantial completion of the responding Party's document production (the "Relevant Time Period"). This period is designed to capture communications and materials reasonably related to the negotiation of the parties' Agreement (which became effective January 1, 2021), the term of the Agreement, and the conduct alleged to have occurred following the Agreement's expiration on June 30, 2023. A Party seeking discovery predating January 1, 2020 for a specific custodian, search term, or category of documents shall identify the basis for the request with reasonable particularity, and the Parties shall meet and confer regarding any such request before it is presented to the Court.

5. **Privileged Materials.** The Protective Order, once entered, will govern the handling of confidential and privileged information in this matter. Nothing in this Protocol shall be

interpreted to require production of documents or ESI protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common-interest doctrine, or any other legally recognized protection, privilege, or immunity. The Parties do not waive any objections to the production, discoverability, or confidentiality of documents, ESI, or any other discovery materials, including but not limited to, objections regarding the proportionality of the discovery request or the burden, breadth or scope, or the relevance of documents, ESI, or any other discovery materials.

6. **Standard for ESI Disclosures.** Within seven days of the Court adopting this Protocol, the Parties shall disclose:

a. **Custodians:** Each Party shall identify up to five custodians that, after a reasonable, good-faith investigation, the Party identifies as likely to have discoverable information in their possession, custody, or control that is relevant to a Party's claim or defense and proportional to the needs of the case. The custodians shall be identified by name, title, and subject matter of the information (hereinafter, "Identified Custodian(s)"). The Parties do not have to necessarily name five custodians. However, regardless of how many custodians are initially disclosed, a Party is obligated to identify any custodians that that Party subsequently learns are likely to have non-duplicative discoverable information in their possession, custody, or control that is relevant to a Party's claim or defense and proportional to the needs of the case. Should discovery show that additional custodians are necessary, either Party can request that they be added to the list of custodians. Should the parties not be able to resolve this issue, the Party seeking additional custodians can seek relief from the Court.

b. **Custodial Data Sources:** A list of custodial data sources (e.g., shared drives, servers, personal computers, mobile devices, iPads or other similar device, WhatsApp and other messaging services, etc.) that are likely to contain discoverable ESI for each Identified Custodian, including a brief description of the source.

c. **Non-Custodial Data Sources:** A list of non-custodial data sources that are likely to contain non-duplicative discoverable ESI, along with a brief description of the source. Source code repositories, version-control systems, and similar engineering data sources shall be identified as non-custodial data sources but shall not be searched, reviewed, or produced except in accordance with Section 9 (Highly Confidential – Source Code and Trade Secret Materials) below.

d. **Email Data Sources:** A list of email addresses and systems (e.g., Exchange/Outlook, emails stored at ISPs, or cloud email providers (e.g., Gmail, Yahoo)), likely to contain discoverable information for each Identified Custodian.

e. **Anticipated Issues:** Notice of any problems or issues reasonably anticipated to arise in connection with e-discovery, including any material limitations of the disclosing Party's ESI search or review platform (e.g., an inability to run multi-term Boolean content searches, or to apply a date restriction to an individual search term) that may affect that Party's ability to comply with Section 10 below. Where a Party discloses such a limitation, the Parties shall meet and confer in good faith regarding a workable alternative, and no Party shall be required to procure, license, or pay for e-discovery search or review software or platform capabilities beyond what it uses in the ordinary course of its business absent a separate agreement on cost allocation.

f. **Third-Party Data Sources:** A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Protocol and the Protective Order with the subpoena and state that the Parties in this Litigation have requested that third parties produce documents in accordance with the specifications set forth therein. The Issuing Party shall produce a copy to the other Party of any documents and ESI (including metadata) obtained under subpoena to a non-party.

g. **Non-Party Confidential Information:** Where a Party intends to produce information that it reasonably believes is subject to a confidentiality obligation owed to a non-party (including, without limitation, information received from LGEUS or from Verance's commercial licensees or other counterparties), that

Party shall, where reasonably practicable, provide the affected non-party with ten (10) business days' notice and a reasonable opportunity to object before production, unless the non-party has otherwise consented or a shorter period is required by a Court-ordered deadline. This subsection does not create an independent basis to withhold responsive, non-privileged documents beyond the notice period described above.

7. **Meet and Confer Requirements.** After the disclosures in Section 6 are made, the non-disclosing Party has five days to raise any objections with the disclosing Party's Identified Custodians, custodial data sources, non-custodial data sources, email data sources, or expected issues. The Parties then have five days to meet and confer to resolve any disagreements on the information identified pursuant to Section 6.

To the extent a discovery dispute related to ESI arises after the information exchange and agreements are reached under Section 6 of this Protocol, the Parties shall first meet and confer. If the Parties are unable to resolve any disputes under this provision, the Parties shall seek intervention of the Court.

8. **Production Format.**

a. **General Document Image Format.** Each electronic document shall be produced in single page Tagged Image File Format ("TIFF") format. TIFF files shall be named with a unique production number except that a Producing Party may produce documents not conveniently produced in TIFF format in native format. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

b. **Text-Searchable Documents.** The Parties have an obligation to make its production text-searchable at no cost to the receiving Party, even if the documents are not in text-searchable format independent of this Litigation. The Parties agree not to degrade the searchability of documents as part of the document production process.

c. **Bates Numbering Footer.** Each document image shall contain a footer with a sequentially ascending production number with unique IDs with a prefix that can readily be attributed to the Producing Party.

d. **De-Duplication.** A Party is only required to produce a single copy of a responsive document and each Party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document family level) across volumes. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the Parties shall meet and confer to discuss any other proposed methods of de-duplication.

e. **Native Files.** Documents that cannot be rendered to TIFF format, that cannot be produced at their original resolution in TIFF format, or that cannot be legible rendered in TIFF format will be produced in native form. A Party that receives a document produced in a format specified above may also make a reasonable request to receive the document in its native format, and upon receipt of such a request, the Producing Party shall produce the document in its native format.

f. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designation in accordance with the Protective Order. Each responsive document produced in native format will identify the confidentiality designation in the file name of the native file.

g. **Scans of Hard Copy Documents.** To the extent a Party chooses to produce a scanned copy of a hard copy document, such a copy shall be scanned using Optical Character Recognition (OCR) technology and produced as single-page Group IV TIFFs, with at least 300 dpi. Each TIFF image shall be named according to the corresponding bates number associated with the document. Each image shall be branded according to the bates number and applicable confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents. The documents should be unitized as they currently physically exist in the ordinary course of business. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

h. **Password Protections.** The Parties will use commercially reasonable efforts to open password-protected or encrypted files including commercially accessible software, when appropriate and feasible.

i. **Analytics.** The Parties may elect to use analytics including but not limited to email threading and computer-assisted review. However, the Parties must meet and confer before relying on technology assisted review or other automated technology-based tools to facilitate its identification of potentially responsive documents. Absent an agreement among the Parties as to such use, the matter may be presented to the Court for resolution.

j. **Different Format.** If particular documents warrant production in a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. Prior to converting any native document, all metadata, created data, or hidden content must be preserved and produced in accordance with the terms of this Protocol. The Producing Party shall not object to reasonable requests for color images or higher resolution images if the document as originally produced is illegible or difficult to read.

k. **Language.** All documents shall be produced in their original language. Where a document responsive to a discovery request exists in a foreign language and an English-language version of the document exists in the Producing Party's possession, custody, or control, the Producing Party shall produce both the original document and all English language versions.

l. **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) must be preserved in such a way that a document or electronic file and any attachment(s) are produced in the same production set and sequentially bates numbered such that the relationships are identifiable. The Parties agree to provide beginning attachment and ending attachment fields in the database load file to capture the entire production number range for the parent/child(ren) documents.

m. **Rolling Production.** The Parties may make document productions on a rolling basis. Absent agreement of the Parties or order of the Court, a Producing Party shall substantially complete its document production within a reasonable time following resolution of the search terms and custodians applicable to that production, and the Parties shall meet and confer regarding a schedule for substantial completion once the scope of production is finalized.

9. **Highly Confidential – Source Code and Trade Secret Materials.** No Party shall be required to search for, review, or produce source code, technical specifications, design documentation, parameter sets, proprietary algorithms, or other highly sensitive trade secret or competitively sensitive technical materials (collectively, "Source Code Materials") until the Court has entered a Protective Order containing provisions specific to Source Code Materials.

10. **Email Production.**

a. **Custodians.** The custodians whose email will be searched shall be limited to the Identified Custodians per side.

b. **Search Terms.** For each custodian from which email is sought, the Requesting Party may identify up to ten (20) search terms (not including foreign language equivalents), and a corresponding date range for each search term, subject to subsection (c)(iv) below. The Parties agree that search terms must be reasonably tailored. Indiscriminate terms, such as the names of the Parties or their products, are inappropriate unless combined with search criteria that sufficiently reduces the risk of overproduction. A conjunctive use combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.

A particular search term that returns a disproportionate amount of non-responsive documents is objectionable. A search term request that results in more than 500 hits inclusive of family members for a given search term for a single custodian shall be

presumed unreasonable. Absent party agreement, the party propounding that production request will have the burden to prove to the Court that the request is proper. A "hit" is defined as a document matching a search term plus all that document's family members (e.g., an email plus its attachments); for example, if a search term matches one email that has two attachments, that counts as three hits regardless of whether the attachments also contain the search term. In such cases, the Parties shall work together in good faith to eliminate the search term or to revise the search term as appropriate. It is expected that the parties will meet and confer and iterate on requested search terms to generate no more than 500 hits per search term, per custodian or non-custodial data source. During each iteration, the party to whom a search term request is directed must provide hit counts for each search term and accept or object on a search term-by-search term basis. Disclosure of these hit counts will not result in waiver of any privileged subject matter. The parties agree that, if a given search term returns more than 500 hits, that does not necessarily indicate that all the hit-upon documents are relevant. The parties will not argue that a hit count of more than 500 hits for a proposed search term "proves" the appropriateness of the search term.

i. Single Company Names and Abbreviations. A single company name, brand name, or common abbreviation thereof (e.g., "LG" or "LGE"), standing alone, shall be presumed to be overbroad and not reasonably tailored because such terms are prone to a high rate of false positives, including as a substring of unrelated words (e.g., "LG" also appearing within "bulge," "indulge," and similar terms). Such a term shall only be used if combined with an additional qualifying term, phrase, wildcard restriction, whole-word search modifier, or other narrowing criterion reasonably designed to reduce the risk of non-responsive over-collection. The Parties shall meet and confer in good faith regarding appropriate qualifiers before such a term is run.

ii. Platform Limitations – Date Restrictions. The Parties acknowledge that a Party's ESI search platform (e.g., Microsoft Purview eDiscovery) may not support the application of a distinct date range to each individual search term. Where a

Producing Party discloses such a limitation pursuant to Section 6(e), the Producing Party may instead apply a single date range consistent with the Relevant Time Period (Section 4) across all search terms run against a given custodian or non-custodial data source, in lieu of a search-term-specific date range.

iii. Platform Limitations – Conjunctive Content Searches. The Parties further acknowledge that a Party's ESI search platform may not support a fully conjunctive Boolean query across multiple free-text content terms (e.g., "LGE AND Aspect"), but may support a content term combined with a metadata-field qualifier (e.g., a participant or domain restriction, such as "content: Aspect AND participant:lge.com"). Where a Requesting Party proposes a conjunctive content search that the Producing Party's platform does not support, the Parties shall meet and confer in good faith to identify a comparably narrowing alternative query using functionality reasonably available to the Producing Party in the ordinary course of its business. No Party shall be required to procure, license, or pay for e-discovery search or review software, or platform upgrades, beyond what it uses in the ordinary course of business, absent a separate agreement on cost allocation.

To the extent any custodian sends or receives email in more than one language, that custodian's email shall be searched using the search terms identified by the Requesting Party as well as using foreign language equivalents for each term, translated into each language in which the custodian sends or receives email. The Parties further agree to meet and confer regarding foreign language equivalents for each identified search term.

Once the Parties agree on the Search Terms, and any other objections are resolved, the results should be produced. For the avoidance of doubt, while the Producing Party may withhold documents that hit upon the Search Terms on the basis of Privilege, it should not withhold documents for any other basis, e.g., relevance. Production of a document that hit upon a Search Term is not an admission that such a document is, in fact, relevant or admissible.

c. **Attachments.** The Parties shall produce email attachments sequentially after the parent email to preserve associations between attachments and parent documents and the email family unless there is an applicable privilege or protection claimed as to the parent or email attachment. For the avoidance of doubt, if one document in a family hits upon a Search Term, the entire family should be produced.

d. **Email Threads.** Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments, within the most inclusive email message. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced. Where an entire email thread is withheld from production under a claim of privilege, the Party's privilege log need reflect only the most inclusive message.

11. **Time Zone.** To the extent reasonably practicable, all ESI shall be processed with a single time zone, Coordinated Universal Time (UTC), and a date and time setting that is consistent across both Parties' productions.

12. **ESI Sources Deemed Inaccessible.** The Parties agree that, in the absence of a showing of good cause, there is no obligation to preserve, restore, collect, search, or produce information from the following sources: disaster recovery materials (including back-up tapes); on-line access data such as cache, cookies, and the like; electronic data temporarily stored by laboratory or engineering equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory or engineering report; sandbox, development, or testing environments and associated version history that have been superseded by a current production version and are not ordinarily accessed in the course of business; and data remaining from systems no longer in use that is unintelligible

on the systems in use. The Parties agree that these ESI sources would be considered inaccessible or unduly burdensome ESI sources.

13. **Standard for Preservation of ESI.** The Parties are expected to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, the Relevant Time Period set forth in Section 4, and other parameters to limit and guide preservation and discovery issues. A Party's meaningful compliance with this Protocol and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26, including, without limitation, requests that would require forensic examination or imaging of source code repositories or engineering systems beyond the procedures set forth in Section 9. Likewise, a Party's nonresponsive or dilatory discovery tactics are cost-shifting considerations. The Parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made.

14. **Modification.** This Protocol may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

15. **Costs.** Generally, and unless specified above, the costs of discovery shall be borne by each Party. Nothing herein is intended to waive a Party's rights under Fed. R. Civ. P. 26(b)(2)(B) or 26(b)(2)(C).

SO ORDERED this 20th day of October, 2026.



Hon. Edgardo D. Ramos